**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, et al., Plaintiffs,**

v.

**Louis SULLIVAN, Defendant.**

**NATIONAL TREASURY EMPLOYEES UNION, et al., Plaintiffs,**

v.

**Louis SULLIVAN, Defendant.**

**Civ. A. Nos. 88–3594 (HHG), 90–0205 (HHG).**

United States District Court, District of Columbia.

March 24, 1992.

Timothy Hannapel, Asst. Counsel, Elaine Kaplan, Deputy Director of Litigation, Nat. Treasury Employees Union, Washington, D.C., for plaintiffs NTEU, et al.

Joseph Goldberg, American Federation of Government Employees, AFL–CIO, Washington, D.C., for plaintiff AFGE.

Mary E. Magee, Atty., Civ. Div., Federal Programs Branch, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

On September 15, 1986 President Reagan issued Executive Order 12564[1] which requires federal agencies to develop and implement plans to attain a drug-free workplace, in part by the use of compulsory drug testing. Pursuant to this order, the Department of Health and Human Services developed its "Drug–Free Workplace Plan." The American Federation of Government Employees (AFGE) and the National Treasury Employees Union (NTEU) sought a preliminary injunction to enjoin the random testing of certain employees under this plan. The Court granted the motions in part and denied them in part with respect to certain employees. *American Federation of Gov't Employees v. Sullivan,* 744 F.Supp. 294 (D.D.C.1990). This Court specifically upheld the testing of motor vehicle operators who carry passengers. *Id.* at 300.

The issue here is whether HHS may designate for random drug testing employees who are motor vehicle operators but who *do not* carry passengers. The two positions in question are Messenger/Motor Vehicle Operators, who act as couriers, and Mail Clerk/Motor Vehicle Operators who receive, sort, and deliver mail. The plaintiffs and the defendant have each moved for summary judgment.

■ The reasonableness of random drug testing is determined by "balanc[ing] the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context." *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 665–66, 109 S.Ct. 1384, 1390, 103 L.Ed.2d 685 (1988).

■ Applying this balancing test, the Court of Appeals for this Circuit upheld the testing of mail van operators who had undergone extensive background investigations and possessed either top secret or secret security clearances. *American Federation of Gov't Employees v. Skinner,*

1. *Reprinted* in 51 Fed.Reg. 32889–32893 (Sept. 15, 1986).

885 F.2d 884 (D.C.Cir.1989). The Court based its holding on national security, rather than safety, concerns, concluding that "the government's interest in protecting truly sensitive information ... outweighs the privacy interests of tested mail van operators." *Id.* at 893. The court also relied on the fact that employees who undergo background checks have a diminished expectation of privacy. *Id.*

In *National Treasury Employees Union v. Yeutter*, 918 F.2d 968 (D.C.Cir.1990), the court upheld random testing of motor vehicle operators who carry passengers, but who do not have access to any classified information, noting the government's strong safety interest in "testing [Food and Nutrition Service] drivers who are responsible for the safety of their passengers—however many in number," and concluding that this interest outweighed the individual's interest in privacy. *Id.* at 972. The Court also noted, however, that "[i]t is not obvious to us that the government could show a special need, unrelated to law enforcement, to test drivers who do not carry passengers...." *Id.*

■ As noted, the reasonableness of drug testing turns on balancing the government's interest against the individual's privacy expectation. The employees at issue here do not carry passengers and do not have access to classified information. Therefore, neither the national security concerns articulated in *Skinner* nor the passenger safety rationale of *Yeutter* is applicable. The government's interest here is the safety risk that an impaired government driver might pose to other drivers on the road. While not insubstantial, this is obviously no different than the interest the public and the government have in keeping any potentially impaired driver off the road. If this is · a sufficient "special government need[ ]" to permit warrantless searches under *Von Raab*, 489 U.S. at 665, 109 S.Ct. at 1390, then the federal govern-

ment could proceed to test any and all drivers on the road.[2]

The intrusion into an individual's expectation of privacy is obvious and substantial:

An employee selected for random testing must proceed to a designated private site or a restroom stall in the company of a collection site monitor. Upon entering the restroom, the employee must remove any unnecessary outer garments that might conceal items or substances that could be used to tamper with the specimen. The employee must then wash his or her hands before urinating and remain in the restroom or collection site throughout the collection process ... The collection site monitor then remains close by, listens to the urination, and notes any "unusual behavior" while the employee is urinating. The employee is instructed not to flush the toilet until the urine specimen is turned over to the collection site person.

*Bangert v. Hodel*, 705 F.Supp. 643, 646 (D.D.C.1989) (summarizing Department of Health and Human Services guidelines). If there are problems with the specimen, an individual may be required to urinate under the direct visual observation of the monitor. *Id.*

In the view of this Court, the individual's expectation of privacy and his rights under the Fourth Amendment to the Constitution outweigh the government's legitimate interests here, and accordingly it would be unreasonable and hence unconstitutional to subject these motor vehicle operators to random drug testing.

An Order consistent with this Memorandum is issued contemporaneously herewith.

### ORDER

Upon consideration of plaintiffs' motions for summary judgment and for a permanent injunction, defendant's motion for summary judgment, the oppositions and replies thereto, it is this 23rd day of March,

---

**2.** The court in *Yeutter* characterized this concern as "more rhetoric than argument" but that was in the context of considering government drivers who are responsible for the safety of their passengers and fellow government employ-

ees. The court specifically went on to question whether the government could justify testing drivers who do not carry passengers. 918 F.2d at 972.

1992, in accordance with a Memorandum issued this date

ORDERED that the defendant's motion for summary judgment be and it is hereby denied; and it is further

ORDERED that the plaintiffs' motions for summary judgment and for a permanent injunction against the random drug testing of motor vehicle operators whose duties do not include the transportation of passengers be and they are hereby granted.