Louie L. Barney Arcadia City Attorney 302 West Eighth Street Pittsburg, Kansas 66762
Dear Mr. Barney:
As City Attorney for the City of Arcadia, you inquire whether the City's drug testing program violates the Fourth Amendment to the United States Constitution. You indicate that the program requires that all employees, regardless of job classification, are subject to random drug and alcohol testing in order to further the City's goal of "[providing] a safe workplace by eliminating the hazards to health and job safety created by drug and alcohol abuse."[1]
The Fourth Amendment generally proscribes searches by government agents absent individualized suspicion of wrongdoing.[2] In Skinner v. RailwayLabor Executives' Assn.,[3] the United States Supreme Court examined the validity, under the Fourth Amendment, of federal regulations that require railroad companies to administer blood and urine tests to employees who are involved in serious train accidents. The Court concluded that a urine test to determine the presence of drugs constitutes a "search" for purposes of the Fourth Amendment. However, the Court noted that not all searches violate the Fourth Amendment — only those searches that are unreasonable:
 "What is reasonable, of course, depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself. [The] permissibility of a particular practice is judged by balancing the intrusion on the individual's Fourth
Amendment interests against [the government's] promotion of legitimate governmental interests."[4]
The Court then balanced the privacy interests of a railroad employee in being subjected to a search without any individualized suspicion of recent drug or alcohol use with the "compelling" nature of the governmental interest in testing employees who "discharge duties fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences."[5] The Court concluded that because of the government's compelling interest in ensuring public safety, the Fourth Amendment's requirement of reasonableness was satisfied.
In National Treasury Employees Union v. Von Raab,[6] the United States Supreme Court upheld a drug testing program adopted by the United States Customs Service for employees who carried firearms and employees involved in drug interdiction:
 "It is readily apparent that the government has a compelling interest in ensuring that front-line interdiction personnel are physically fit, and have unimpeachable integrity and judgment. [This] national interest in self-protection would be irreparably damaged if those charged with safeguarding it were, because of their own drug use, unsympathetic to their mission of interdicting narcotics. A drug user's indifference to the Service's basic mission, or even worse, his active complicity with the malefactors, can facilitate importation of sizable drug shipments or block apprehension of dangerous criminals. [Moreover] customs employees who may use deadly force plainly `discharge duties fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences.'
[Citation omitted.]"[7]
However, when the Court considered whether drug testing was reasonable for employees who were required to handle classified material, the Court determined that while the government had a compelling interest in drug testing for this purpose, there was insufficient evidence concerning whether certain employees[8] would be handling sensitive information. The Court remanded the matter in order to clarify the scope of employees subject to testing.
The most recent United States Supreme Court case to consider mandatory drug testing is Chandler v. Miller,[9] where the Court concluded that a Georgia statute that required candidates for state office to submit to and pass a drug test violated the Fourth Amendment. The State's attempt to justify the statute by arguing that its "compelling need" was the incompatibility of drug use with holding high state office was not sufficiently "compelling" for the Court:
 "Our precedents establish that the proffered special need for drug testing must be substantial enough to override the individual's acknowledged privacy interest. [Georgia] has failed to show . . . a special need of that kind. The statute, according to respondents, serves to deter unlawful drug users from becoming candidates and thus stops them from attaining high office. Notably lacking in respondents' presentation is any indication of a concrete danger demanding departure from the Fourth Amendment's main rule. Nothing in the record hints that the hazards respondents broadly describe are real and not simply hypothetical for Georgia's polity. The statute was not enacted . . . in response to any fear or suspicion of drug use by state officials. A demonstrated problem of drug abuse, while not in all cases necessary to the validity of a testing regime, would shore up an assertion of special need for a suspicionless general search program.
 "What is left, after close review of Georgia's scheme, is the image the State seeks to project. By requiring candidates for public office to submit to drug testing, Georgia displays its commitment to the struggle against drug abuse. The suspicionless tests, according to respondents, signify that candidates, if elected, will be fit to serve their constituents free from the influence of drugs. But Georgia asserts no evidence of a drug problem among the State's elected officials, those officials do not perform high risk, safety-sensitive tasks, and the required certification immediately aids no interdiction effort. The need revealed, in short, is symbolic, not "special," as that term draws meaning from our case law."[10]
The lesson of Skinner, Von Raab, and Chandler is that a court will not uphold a governmental employee drug testing program in the absence of individualized suspicion unless the government can establish a special need sufficiently compelling to justify a departure from the strictures of the Fourth Amendment. Moreover, the special need must be more than "symbolic" as was the case in Chandler. If the special need is established, a court will then balance the governmental need with the privacy interests of the employee.[11]
Before leaving this area, we note that the District Court of Kansas has considered random drug testing of governmental employees in the case ofBannister v. Board of County Commissioners of Leavenworth County.[12]
In Bannister, the Court applied the holdings in Skinner and Von Raab when it enjoined Leavenworth County from requiring a secretary to submit to drug testing as part of the County's random drug testing program for "safety-sensitive" positions.[13] Finding that Mrs. Bannister did not occupy a "safety-sensitive" position by virtue of her mostly clerical duties, the Court concluded that the County had not shown any "compelling interest" that would justify requiring Mrs. Bannister to submit to a drug test.
The City of Arcadia's one page "Policy on Drug and Alcohol Abuse" provides that "all employees will be subject to mandatory random drug and alcohol screening" and that the City has selected a hospital to collect urine samples and "conduct testing for drug and alcohol abuse." The City's stated justification for the policy is its "commitment to maintaining a safe and secure workplace [, which] requires a clear policy relating to the detection and prevention of substance abuse by existing employees."
It is our opinion that the City of Arcadia's stated justification for its drug testing program is similar to Georgia's unsuccessful attempt to justify drug testing all candidates for state office and, therefore, would not meet the "special need" standard set out in Chandler. Therefore, absent evidence of a special need to test all City employees, the City of Arcadia's drug and alcohol testing program violates the Fourth
Amendment to the United States Constitution.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm
[1] City of Arcadia Policy on Drug and Alcohol Abuse.
[2] Chandler v. Miller, 520 U.S. 305, 117 S.Ct. 1295, 137 L.Ed.2d 513
(1997).
[3] 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).
[4] Skinner, 489 U.S. at 619.
[5] Id. at 628.
[6] 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989).
[7] Van Raab, 489 U.S. at 670-71.
[8] Accountants, animal caretakers, attorneys, baggage clerks, mail clerks, and messengers.
[9] 520 U.S. 305, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997).
[10] Chandler, 520 U.S. at 318-21.
[11] O'Neil v. Louisiana, 61 F. Supp.2d 485, affd. 197 F.3d 1169 (5th Cir. 1999) (Louisiana statute requiring elected officials to submit to random drug testing violates Fourth Amendment). See Loder v. City ofGlendale, 927 P.2d 1200 (Ca. 1997) (City's suspicionless drug testing of all employees who were offered promotion was not reasonable under theFourth Amendment); American Federation of Government Employees v.Sullivan,787 F. Supp. 255 (D.C. 1992) (random drug testing of motor vehicle operators who did not carry passengers was unreasonable underFourth Amendment) See also Validity, under Federal Constitution, ofRandom Drug Testing of Public Employees, 86 ALR Fed 420 (1988).
[12] 829 F. Supp. 1249 (D.Kan. 1993).
[13] Leavenworth County had deemed all of its employees to be in "safety-sensitive" positions.